IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CAROLINE CALLAWAY, <br> Plaintiff, <br><br> vs <br><br> CITY OF AUSTIN; TRAVIS COUNTY; AUSTIN POLICE OFFICER PATRICK OBORSKI; AUSTIN POLICE OFFICER ADAM JOHNSON; TRAVIS COUNTY SHERIFF'S DEPUTIES JOSEPH HOSTEN, TUNI ORTON, JOSHUA STRICKLAND, LISA JOHNSON, AND FNU ROBLES; PRO-TOUCH NURSES, INC; AND SHANEA RAMSEY-GRAHAM, <br> Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO: 15-103 |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Caroline Callaway brings these claims arising from a February 4, 2013 incident in which the Defendants named herein, individually and acting in concert, violated Callaway's constitutional and civil rights. Plaintiff Callaway brings this action against the City of Austin, Texas; Travis County, Texas; Austin Police Officers Patrick Oborski and Adam Johnson, individually and in their official capacities; Travis County Sheriff's Deputies Joseph Hosten, Tuni Orton, Joshua Strickland, Lisa Johnson, and FNU Robles, individually and in their official capacities; Shanea Ramsey-Graham; and Pro-touch Nurses, Inc. This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1988, the United States Constitution, as well as statutory and the common law of the State of Texas.

1

**PARTIES**

1. Plaintiff Caroline Callaway resided in Travis County, Texas, within the Austin Division of the Western District of Texas, at the time of the incident at issue in this case and at the time of the filing of this lawsuit.

2. Defendant City of Austin is a political subdivision located within the boundaries of the Austin Division of the Western District of Texas. Defendant City of Austin has been served with process and has appeared herein.

3. Defendant Travis County is a political subdivision of the State of Texas located within the boundaries of the Austin Division of the Western District of Texas. Defendant Travis County has been served with process and has appeared herein.

4. Defendant Patrick Oborski and Defendant Adam Johnson are police officers for the City of Austin who, at all times relevant to this lawsuit, were acting within the course and scope of their employment with the City. Defendant Oborski and Defendant Johnson are sued in both their individual and official capacities. Defendant Oborski and Defendant Johnson have been served with process and have appeared herein.

5. Defendant Officers Joseph Hosten, Tuni Orton, Joshua Strickland, Lisa Johnson, and FNU Robles are deputies for the Travis County Sheriff's Office who, at all times relevant to this lawsuit, were acting within the course and scope of their employment with the County. Travis County Sheriff Defendant Officers Hosten, Orton, Strickland, Johnson, and Robles are sued in both their individual and official capacities. Travis County Sheriff Defendant Officers Hosten, Orton, Strickland, Johnson, and Robles may be served with process at the Travis County Sheriff's Department, 5555 Airport Boulevard, Austin, Texas.

6. Defendant Shanea Ramsey-Graham is a resident of Travis County and an employee of Pro-touch Nurses, Inc. At all times relevant to this lawsuit, Defendant Ramsey-Graham was acting as an

agent of the City of Austin and Travis County, as well as within the course of her employment with Pro-touch Nurses Inc. Defendant Ramsey-Graham has been served with process and has appeared herein.

7. Defendant Pro-touch Nurses, Inc. is a Texas corporation which at all times relevant to this lawsuit was acting as an agent of the City of Austin and Travis County. Defendant Pro-touch Nurses, Inc. has been served with process and has appeared herein.

8. At all times relevant to this complaint, each of the Defendants were acting under color of law.

## JURISDICTION AND VENUE

9. The Court has jurisdiction to hear each of Plaintiff's claims, and this Court is the proper venue to have those claims heard. The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this is a civil action arising under Constitution and the laws of the United States. The Court also has original jurisdiction pursuant to 28 U.S.C. §1343, because Plaintiff seeks redress the deprivation of, and to recover damages for the violation of, her civil rights. Also, the Court has supplemental jurisdiction to hear Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367. The subject matter in controversy is within the jurisdictional limits of this Court. Venue in this Court is appropriate under 28 U.S.C. §1391(b) because most Defendants reside in the Western District of Texas and all of the events giving rise to these claims occurred in the Western District of Texas.

## JURY DEMAND

10. Plaintiff respectfully demands a trial by jury.

## FACTS

11. In the early morning of February 4, 2013, Plaintiff Caroline Callaway was stopped in Austin, Texas, in a routine traffic stop by Defendant Officer Patrick Oborski, with the Austin Police Department's DWI Unit, after running a red light. Callaway was stopped during a "no-refusal"

weekend, an initiative of the Austin Police Department in which individuals stopped who do not consent to a voluntary breath or blood test are arrested and held while a warrant to take a blood sample is secured from a judge on standby duty.  In the course of detaining Callaway, Oborski performed a field sobriety test and asked Callaway to submit to a DWI breath test alcohol.  When Callaway declined to submit to the breath test, Oborski placed Callaway under arrest.  At no point during her arrest was Callaway combative, and she did not physically resist or threaten any officers.  Callaway was arrested for alleged misdemeanor offenses.

12.     Defendant Oborski took Callaway to the Travis County Sheriff's Office central jail for processing.  Defendant Officer Adam Johnson was on duty at the jail assigned as the DWI supervisor for the no-refusal initiative.  Officer Oborski obtained a blood search warrant from the on-duty judge.  Officer Oborski then told Callaway that they were going to take her blood.

13.     Defendant Officer Adam Johnson then took a handcuffed Callaway to a small padded room with a restraint chair.  Defendant Shanea Ramsey-Graham, an employee of Pro-touch Nurses, Inc., was in the room, along with Officer Oborski and Travis County Sheriff Defendant Officers Hosten, Orton, Strickland, Johnson, and Robles.  Callaway was kept in physical restraints during the entire time relevant to this incident.  At no point did Callaway attempt to flee, fight, or otherwise try to escape from the Officers.

14.     APD Defendant Officers Oborski and Johnson, along with Travis County Sheriff Defendant Officers Hosten, Orton, Strickland, Johnson, and Robles, strapped Callaway into the restraint chair.  Callaway, already in handcuffs, was also placed in leg irons.  Once placed in the restraint chair, Callaway's hands and feet are handcuffed to the chair.  Straps were placed across Callaway's legs, over her shoulders, and around her wrists.  Secured to the restraint chair, Callaway was completely immobilized. Callaway, 22 years-old at the time, weighed only 140 pounds. Callaway did not try to fight or flee the Officers, and was no threat to the Officers' safety—or anyone else's

safety. While Callaway had previously told the Officers that she would not consent to the blood draw, once she was in the restraint chair Callaway did not speak.

15.     All of the Defendant Officers and Defendant Ramsey-Graham then surrounded Callaway in the restraint chair. The Officers grabbed Callaway and put a bag completely over Callaway's head, covering her eyes, nose and mouth. The bag prevented Callaway from seeing what was going on and made it extremely difficult for her to breathe. At the time the bag was over her head, at least four of the Officers were also physically grabbing and restraining Callaway.

16.     During the course of her arrest and detention, Callaway had informed the officers that she suffered from an anxiety disorder for which she took medications. When the Officers grabbed Callaway and placed the bag over her head, Callaway's body began to involuntarily shake from anxiety and fear. Callaway also began gasping for breath, fearing that she was being suffocated.

17.     Despite Callaway's obvious physical and mental distress, Defendant Ramsey-Graham prepared to take Ms. Callaway's blood. Defendant Adam Johnson grabbed Ms. Callaway's arm trying to forcibly stop her involuntary shaking. While Callaway was still shaking, Defendant Ramsey-Graham attempted to take her blood, causing the needle to pop out and blood to get on Officer Adam Johnson's hand. Seeing the blood on his hand, Officer Johnson released his grip on Callaway's arm and then instead used his boot and body weight to try to prevent Callaway's arm from moving. When Callaway continued trembling, one of the officers used his hand or hands to choke Callaway around her neck, until she was on the verge of losing consciousness and her body went limp. As the fully restrained Callaway was being choked to the verge of losing consciousness, the other Defendant Officers either participated in restraining Callaway or did not intervene to prevent her from being choked. While Callaway was limp and

on the verge of losing consciousness, Ramsey-Graham took a blood sample from Callaway's hand, as Johnson continued to press down on Callaway's arm with the aid of his boot.

18.     In addition to violating Callaway's constitutional rights, Defendants' actions directly and proximately caused Callaway to suffer significant damages, including mental anguish, physical and emotional injuries, pain and suffering, embarrassment, humiliation, shame, indignity, and special damages she incurred or will incur, including but not limited to past, present and future medical bills; past, present and future lost wages; legal fees and legal expenses.  Callaway suffered from severe bruising on various parts of her body, particularly around her neck where a Defendant Officer choked her.  Callaway also suffered nerve damage which may be permanent.  Callaway has also suffered from post-traumatic stress disorder as a result of the incident.

19.     The application of force used against Callaway during the blood draw was objectively unreasonable and excessive.  Callaway was subjected to terrifying and potentially life-threatening brutality, an affront to her body and her dignity, when she posed no physical threat, was fully restrained strapped to a chair, and had presented at the most only passive and verbal resistance at any point during her arrest, and no resistance at all once restrained in the chair for the blood draw.  The search was unlawful, and the force used was excessive and conscious-shocking.

20.     Neither the Austin Police Department nor the Travis County Sherriff's Department have any formal written policy on the involuntary blood draw procedure, but the practice and unwritten policy of the City and the County is to follow the same procedure used against Callaway.  On each occasion, the person is strapped down in the chair, and a hood was placed over the person's head.  On each occasion, the person's blood is forcibly taken no matter how upset, combative or mentally unstable the person presents.  The Austin Police Department and the Travis County Sherriff's Department teach and instruct their officers to use the tactics used on Callaway when making an involuntary blood draw.  The common practice and procedure of

the City of Austin and Travis County for involuntary blood draws, as was conducted in this case, is an unreasonable search and seizure and an excessive use of force.

21. At all times relevant to this Complaint, it was the policy of Defendants City of Austin and Travis County to draw blood from DWI suspects at the jail rather than in a hospital or other medical facility even when the suspect objected and/or was distraught or combative. In the past, blood draws were performed at a medical facility. Around the end of 2011, beginning of 2012, the present administration decided to change the procedure to perform blood draws at the jail. This decision was made for financial reasons without regard to safety of the persons subjected to the procedure. This decision and new procedures to implement the decision were made at the top of the chain of command. This policy changing the location of the blood draw contributed to the pattern and practice of engaging in excessive force and unreasonable search and seizures in the collection of involuntary blood draws.

22. The City of Austin and Travis County were on notice of the risk of injury from blood draw procedures performed in the Travis County jail. Defendants City of Austin and Travis County approved the procedures described in this Complaint. The procedures are performed routinely by employees and contractors of City of Austin and/or Travis County, with involuntary blood draws occurring almost every day. The City of Austin and Travis County acted with deliberate indifference in failing to establish policies, and failing to ensure adequate training. Defendant City of Austin and its officers were on notice of prior complaints of excessive force using choke holds, in particular at least one complaint against Defendant Patrick Oborski.

23. The Defendants had possession of and access to a video of the blood draw from Callaway. Video cameras are mounted on the wall in the phlebotomy room and the isolation cells in the booking area of the Travis County jail. This video was readily available to the Austin Police Department during their investigation. The video can easily be downloaded and

preserved.  But the video was not preserved, and the video evidence was subsequently destroyed by the City of Austin and/or Travis County.

24. Defendant City of Austin contracts with Defendant Protouch-Nurses, Inc. to take blood from persons arrested by officers of the Austin Police Department.  At the time of the incident subject of this Complaint, Defendant Ramsey-Graham was the Protouch employee contracted with the City of Austin to draw blood.  Defendant Ramsey-Graham was directed to draw blood by Officer Oborski and/or Defendant Johnson.  Neither Protouch-Nurses, Inc., nor Ramsey-Graham established procedures for performing blood draws at the Travis County jail.  Ramsey-Graham failed to follow medically recognized procedures for performing blood draws specifically including but not limited to (1) Ramsey-Graham took blood from a person who was shaking and distraught in violation of medically recognized standard of care, and (2) Ramsey-Graham took blood from Callaway in an unsanitary environment and in an unsanitary manner in violation of medically recognized standard of care.

## CAUSES OF ACTION

### Count 1 — 42 U.S.C. §1983 Claims

25. Plaintiff incorporates by reference all of the foregoing paragraphs and further alleges as follows:

26. Callaway has the right protected under the Fourth and Fourteenth Amendment to the United States Constitution to be free from unlawful searches and seizures.  Callaway's blood was drawn in an unreasonable manner with excessive force.  Drawing blood in the manner in which it was drawn from Callaway violates the Fourth Amendment right to be free from unlawful search and seizure.  Callaway has the right protected under the Fourth and Fourteenth Amendment to the United States Constitution to be free from excessive force.  The force used to effectuate against Callaway was excessive.  And Callaway has a substantive due process right,

under the Due Process Clause, to be free from law enforcement searches and seizures that, in the process of collecting evidence, shock the conscious. The actions taken against Callaway in this case shock the conscious and violated her substantive due process rights.

27. The actions of the Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc., as outlined herein were an excessive, inappropriate, and improper use of force that was a proximate cause of Callaway's damages. The actions of the Defendant Officers, Ramsey-Graham and Protouch-Nurses, Inc., as outlined herein also constitute an unreasonable search and seizure that was a proximate cause of Callaway's damages. The actions of the Defendant Officers, Ramsey-Graham and Protouch-Nurses, Inc., as outlined herein were excessive and unreasonable in that: (1) Defendants used excessive force and conducted an unreasonable search and seizure of Callaway's blood despite the fact that she was already fully restrained, was no threat to the anyone, and offered no more that passive or verbal resistance; (2) Defendants used excessive force and conducted an unreasonable search and seizure that caused Callaway's body to involuntarily shake and lose control, rendering it impossible for her to comply with their orders; and (3) Defendants used excessive force and conducted an unreasonable search and seizure by covering Callaway's head with a bag, making it difficult for her to breathe and then choking her until she began to lose consciousness. The actions of Defendant Officers, Ramsey-Graham and Protouch-Nurses, Inc., were taken with deliberate indifference to the deprivation of Callaway's rights. The City of Austin, Travis County, Defendant Officers, Ramsey-Graham and Protouch-Nurses, Inc., are liable to Callaway under 42 U.S.C. §1983 for the deprivation of Callaway's constitutional rights by their actions under color of law.

28. Each Defendant Officer in this case is liable for their own violation of Callaway's constitutional rights. However, each named Defendant Officer is also liable under 42 U.S.C. §1983 under a theory of bystander liability for standing by and watching as Callaway's

9

constitutional rights were violated in their presence but failing to act to prevent the violation. Each of the Defendant Officers was in the room and present as Callaway, fully restrained and helpless, had a bag placed over her head and was choked to the point on the verge of losing consciousness. These Defendant Officers each knew that a fellow officer was violating Callaway's constitutional rights, had a reasonable opportunity to prevent the harm, and chose not to act. As such, regardless of what actions they individually took in the room at the time, each Defendant Officer acquiesced in the violation of Callaway's constitutional rights.

29. The City of Austin and Travis County are liable to Callaway under 42 U.S.C. §1983 for having policies, practices and customs in place for involuntary blood draws that use excessive force and is an unreasonable search and seizure. Each of these policies, practices, and customs was actually and constructively known or ratified by the City of Austin and Travis County and their respective policymakers, in deliberate indifference to the constitutional rights of Callaway and others similarly situated. All of the above described actions and/or inaction were undertaken pursuant to the direction and/or supervision of the Chief of Police of the Austin Police Department and the Sheriff of Travis County and unknown persons within their respective chains of command. These persons were responsible for all training and supervision of the individual members of the Austin Police Department and Travis County Sheriff's Office whose conduct resulted in the violation of Callaway's civil rights.

30. Moreover, the known and obvious consequences of these policies, practices and customs was that state actors would be placed in recurring situations in which the exact types of constitutional violations alleged herein would result. These policies, practices, and customs made it highly predictable that the particular violations alleged herein would result. These policies, practices and customs proximately caused and were the moving force on the

constitutional injuries suffered by Callaway, and caused her to suffer severe damages, including but not limited to, extreme mental anguish and physical pain and suffering.

31.     In the alternative, the City of Austin and Travis County are liable to Callaway under 42 U.S.C. §1983 for having no policy or inadequate supervision, instruction, and training on how to handle involuntary blood draws involving individuals who are only passively or verbally noncompliant.  This failure to have a policy or having inadequate supervision, instruction, and training proximately caused and were the moving force on the constitutional injuries suffered by Callaway, and caused her to suffer severe damages, including but not limited to, extreme mental anguish and physical pain and suffering

## Count 2 — Assault and Battery

32.     Alternatively, the actions of Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc., as described herein violated the rights of Callaway under the tort law of the State of Texas.  Defendant Protouch-Nurses, Inc. is liable for each state law claim for the actions of Ramsey-Graham vicariously and under the doctrine of respondeat superior.  The State law tort claims are not brought against the governmental entities.

33.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

34.     On the occasion in question, Defendant Officers and Ramsey-Graham, acting intentionally, knowingly, or recklessly, made contact with Callaway's person, which caused Callaway to suffer severe and possibly permanently disabling injuries.

35.     As a result of Defendants' assault, Callaway has incurred, and will incur in the future, significant damages as set forth below.

### Count 3 — Assault and Battery

36.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

37.     On the occasion in question, Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc. were negligent by failing to exercise ordinary care to draw blood from Callaway. This negligence of Defendants was a proximate cause of the damages incurred by Callaway as set forth below.

### Count 3 — Medical Malpractice

38.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

39.     On the occasion in question, Defendants Ramsey-Graham and Pro-touch Nurses, Inc. breached the standard of care for drawing blood specifically including: (1) taking blood from a person who is distraught and shaking, and (2) taking blood in an unsanitary manner.  The Medical malpractice was a proximate cause of the Callaway's injuries.

40.     Callaway has satisfied the prerequisites to suit specified by the Texas Tort Claims Act, V.T.C.A Civil Practice & Remedies Code §101.101 for each claim in this complaint to which these laws apply.  The City and County had actual notice of the injury due to Callaway's immediate complaint of pain, visible injuries on her body, and due to the video-taping of the incident by Defendants.

41.     Callaway has satisfied the prerequisites to suit specified by V.T.C.A., Civil Practice & Remedies Code §74.051 by sending notice certified mail to each medical provider against whom this claim is asserted.  Callaway understands that as to the medical defendants, the lawsuit will be abated for 60 days for the medical defendants to review the case pursuant §74.051.

## DAMAGES

42.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

43.     Callaway suffered loss of liberty, mental anguish, physical and emotional injuries, pain and suffering, embarrassment, humiliation, shame, indignity, and special damages she incurred or will incur, including but not limited to past, present and future medical bills; past, present and future lost wages; legal fees and legal expenses. Callaway suffered from severe bruising on various parts of her body, particularly around her neck where a Defendant Officer choked her. Callaway suffered nerve damage which may be permanent. Callaway suffered from post-traumatic stress disorder. The Defendants' conduct described in this Complaint is the direct and proximate cause of all of these damages.

## PUNITIVE DAMAGES

44.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

45.     During the events at issue in this case, in their use of excessive force and in conducting an unreasonable search and seizure, Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc., acted with malicious, intentional, or recklessly or callously indifference to Callaway's constitutional rights.

46.     The conduct of Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc. justifies an award of punitive and exemplary damages against each of these Defendants individually, and Plaintiff seeks an award of punitive and exemplary damages against each of these Defendants individually in an amount to be determined by the jury in this case.

**ATTORNEYS' FEES**

47.     Callaway incorporates by reference all of the foregoing paragraphs and further alleges as follows:

48.     Callaway has been required to retain the services of attorneys to represent her in this complex and difficult proceeding and cause of action. Callaway has retained the undersigned attorneys to represent her, and pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, she is entitled to recover the reasonable and necessary fees incurred for these attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level if the case is appealed, and in the Supreme Court of the United States, if necessary.

**PRAYER**

In light of the foregoing, the Plaintiff asks for Judgment against Defendants as follows:

1.      Judgment against the Defendants, jointly and severally, on behalf of the Plaintiff for actual damages pursuant to 42 U.SC. §1983.

2.      Judgment against Defendant Officers, Ramsey-Graham, and Protouch-Nurses, Inc., for compensatory damages in an amount to be determined by the trier of fact;

2.      Punitive damages from the individual Defendants, in an amount to be determined by the trier of fact;

3.      Statutory and reasonable attorney fees pursuant to 42 U.S.C. §1988(b) of the Federal Civil Rights Act, pre-judgment interest, post-judgment interest, and all of their costs herein expended;

4.      Pre-judgment and post-judgment interest;

5.      Reasonable costs, expenses and attorneys' fees;

6.      Injunctive relief, and

7.      All such other relief at law or in equity to which the Plaintiff is entitled.

RESPECTFULLY SUBMITTED,


By: /s/ Daphne Pattison Silverman
Daphne Pattison Silverman
Silverman Law Group
501 N IH 35
Austin, Texas 78702
Phone 512-485-3003
Fax      512-597-1658
daphnesilverman@gmail.com
TX Bar No: 06739550

*Counsel for Plaintiff Caroline Calloway*


## CERTIFICATE OF SERVICE

I, Daphne Pattison Silverman, do hereby certify that on this the 15th day of April 2015, a true and correct copy of this Second Amended Complaint was served on all parties of record via electronic filing.

/s/ Daphne Pattison Silverman
Daphne Pattison Silverman
Attorney for Caroline Callaway

B