**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2015 JUL 14  PM 3: 28

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | | |
|---|---|---|
| CAROLINE CALLAWAY, | § | |
|      Plaintiff, | § | |
| V. | § | |
| | § | |
| CITY OF AUSTIN; TRAVIS COUNTY; | § | A-15-CV-00103-SS |
| AUSTIN POLICE OFFICER PATRICK | § | |
| OBORSKI; AUSTIN POLICE OFFICER | § | |
| ADAM JOHNSON; TRAVIS COUNTY | § | |
| SHERIFF'S DEPUTIES JOSEPH | § | |
| HOSTEN, TUNI ORTON, JOSHUA | § | |
| STRICKLAND, LISA JOHNSON, AND | § | |
| FNU ROBLES; PRO-TOUCH NURSES, | § | |
| INC.; AND SHANEA RAMSEY- | § | |
| GRAHAM, | § | |
|      Defendants. | § | |

**ORDER ON PENDING MOTIONS TO DISMISS**

ON THIS DAY the Court considered the following pending motions:  Defendants Pro-Touch Nurses, Inc. and Shanea Ramsey-Graham (the "Pro-Touch Defendants")' Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. #41], Plaintiff's Response thereto [Dkt. #49], and the Pro-Touch Defendants' Reply in Support [Dkt #51]; Defendants City of Austin, Officer Adam Johnson, and Officer Patrick Oborski (the "City Defendants")' Rule 12(b)(6) Motion to Dismiss [Dkt. #43], Plaintiff's Response thereto [Dkt. #46], and the City Defendants' Reply in support [#47]; and Defendants Travis County, Deputy Joseph Hosten, Deputy Tuni Orton, Deputy Joshua Strickland, Deputy Lisa Johnson, and Deputy (FNU) Robles (the "Travis County Defendants")' Motion to Dismiss [Dkt. #44], the Travis County Defendants' Amended Motion to Dismiss [Dkt. #45], Plaintiff's Response thereto [Dkt. #53], and the Travis County Defendants' Reply in support [Dkt. #54].  Having reviewed the pleadings, the briefing of the

parties, the relevant law, and the case file as a whole, the Court now enters the following Opinion and Orders.

## I.      Background

Plaintiff Caroline Calloway alleges she was stopped by Austin Police Officer Patrick Oborski in the early morning hours of February 4, 2013, after running a red light.  2d. Am. Compl. [Dkt. #35] at 3.  Officer Oborski asked Callaway to perform a field sobriety test and the take a breathalyzer test for the presence of alcohol.  *Id* at 4.  Callaway declined the breath test, and Officer Oborsky arrested her and obtained a warrant to draw her blood for purposes of testing it for the presence of alcohol.  *Id.*

Callaway alleges her arrest was part of a "no-refusal weekend," an Austin Police Department initiative coinciding with the 2013 Super Bowl Weekend.  *Id.*  As part of the "no refusal weekend," officers of the Austin Police Department were instructed to arrest any individual who did not consent to voluntary breath or blood tests and obtain a warrant from a standby judge to authorize a blood draw from the individual to obtain potential chemical evidence of driving while intoxicated.  *Id.*

Callaway states she was taken to the Travis County Sheriff's Office central jail for processing, where Officer Adam Johnson was the DWI supervisor for the no-refusal initiative.  *Id.*  She asserts she was not combative or resistant during her arrest or during the booking process, *id.*, though she did tell "the Officers" she would not consent to a blood draw.  *Id.* at 5.  She also alleges she "had informed the officers that she suffered from an anxiety disorder for which she took medications."  *Id.*  She does not specify which officers she provided this information.

Callaway alleges, after a warrant was obtained, Officer Johnson led her, in handcuffs, to a small padded room with a restraint chair. *Id.* at 4. Callaway states she was "kept in physical restraints during the entire time relevant to this incident," *id.*, and did not attempt to flee, fight, or otherwise escape. *Id.* In addition to Austin Police Department Officers Adam Johnson and Patrick Oborski, she alleges Travis County Sherriff's Officers Hosten, Orton, Strickland, (Lisa) Johnson, and Robles were waiting in the small padded room. *Id.* A phlebotomist, nurse Shannon Ramsey-Graham, was also waiting in the room to take Callaway's blood. *Id.* Callaway asserts that, without any discussion, she was placed into the restraint chair, which involved leg irons, straps over her legs, shoulders, and wrists, and handcuffing her hands and feet to the chair. *Id.*

Callaway was 22 years old at the time and weighed 140 pounds. *Id.* She reiterates several times that she never tried to fight or flee the restraints. *Id.* She alleges all seven officers nevertheless surrounded her in the restraint chair and that one of the officers put a bag "completely over Callaway's head, covering her eyes, nose, and mouth." *Id.* at 5. She asserts that, at the time the bag was over her head, she felt at least four officers physically grabbing and restraining her. *Id.* At this point, Callaway alleges she began to involuntarily shake from anxiety, and she began gasping for breath, fearing that she was being suffocated. *Id.* Officer Adam Johnson grabbed her arm to forcibly steady it for the blood draw. *Id.*

Nurse Ramsey-Graham attempted a blood draw, but the needle popped out and blood spilled onto Officer Johnson. *Id.* Callaway asserts Officer Johnson then resorted to using his boot and his body weight to try to hold Callaway's arm still. *Id.* Callaway's shaking continued, and another officer "used his hand or hands to choke Callaway around her neck, until she was on the verge of losing consciousness and her body went limp." *Id.* As Callaway went limp, Officer

3

Johnson continued to press down on her arm with the aid of his boot and nurse Ramsey-Graham obtained a blood draw from Callaway's hand. *Id.* at 6. Callaway asserts she suffers from severe bruising, particularly around her neck; nerve damage, which she alleges may be permanent; and post-traumatic stress disorder as a result of her experience. *Id.* at 13.

Callaway brings suit against the City of Austin and Officers Oborski and Johnson; Travis County and Travis County Sheriff's Deputies Hosten, Orton, Strickland, Johnson, and Robles; nurse Ramsey-Graham, and nurse Ramsey-Graham's employer, Pro-Touch Nurses, Inc. ("Pro-Touch"), a company that contracts with the City of Austin to take blood samples on "no refusal" weekends. *Id.* at 8-9. Plaintiff asserts each Defendant violated her rights under the Fourth and Fourteenth Amendment to be free from unlawful seizures by participating in, or creating the conditions for, an unreasonable use of force in drawing her blood. *Id.* at 8-9. Against the individual officers, Callaway alleges each officer is liable not only for his or her individual role but also as a bystander who had a duty to protect Callaway from the actions of the other officers. *Id.* at 9-10. Notably, she does not assert bystander liability against Ramsey-Graham, the nurse. *Id.* Against the City of Austin and Travis County, Callaway asserts claims for direct liability arising out of the City and County's alleged policies that encouraged (or, in the alternative, lack of formal policies and training to prevent) "no refusal" blood draws that relied on excessive force. *Id.* at 10. She does not assert any similar "policy and procedure" or "lack of training" claim against Pro-Touch, Inc. *Id.*

Callaway asserts additional state law claims for assault and battery and negligence against each of the individual officers, nurse Ramsey-Graham, and Pro-Touch, Inc. *Id.* at 11-12. She further asserts claims for medical malpractice against Ramsey-Graham and Pro-Touch, Inc.

*Id.* at 12.    She seeks actual damages, punitive damages, attorneys' fees, and unspecified injunctive relief against all defendants. *Id.* at 12-13.

## II.    Legal Standards Applicable to All Defendants

### A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)6

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).    Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially

identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. *Id.* If not, "the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

### B.    Excessive Force Claims Relating to Arrests and Pretrial Investigations

Callaway's Section 1983 claims against all defendants are grounded in the Fourth and Fourteenth Amendments. 2d Am. Compl. [Dkt. # 35] at 8.  "In a federal civil rights action under [Section] 1983, when a claim arises under multiple constitutional provisions, a court should analyze the claim under the most applicable constitutional provision." *Pittman-Bey v. Celum,* 557 F. App'x. 310, 313 (5th Cir. 2014) (citing *Graham v. Connor,* 490 U.S. 386, 394-95 (1989)). Callaway's excessive force claim concerns the blood draw incident to her arrest.  Therefore, "it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham,* 490 U.S. at 394-95; *Schmerber v. California,* 384 U.S. 757, 767 (1966); *United States v. Bullock,* 71 F.3d 171, 177 (5th Cir. 1995).[1]

---

[1] Some courts have interpreted *Graham* to hold that, where the Fourth Amendment applies to a plaintiff's Section 1983 claims, the plaintiff may not also state a claim under the Fourteenth Amendment. *See, e.g., Speirs v. City of Universal City,* No. SA-10-CV-0222 FB (NN) 2010 U.S. Dist. LEXIS 67718, 11-12 (W.D. Tex. July 8, 2010), rec. adopted, (W.D. Tex. Aug. 17, 2010), (citing *Graham,* 490 U.S. at 394-95).  In this case, however, Callaway has alleged excessive force claims incident to her arrest, but which took place after she had been "processed" at the Travis County Jail. 2d Am. Compl. [Dkt. #35] at 4.  "Whether a particular standard applies turns on the plaintiff's status during the relevant time period." *Dawson v. Anderson County,* 769 F.3d 326, 328 (5th Cir. 2014) (Haynes, J., dissenting from denial of rehearing en banc).  The Fourteenth Amendment applies to claims of excessive force by pretrial detainees. *Kitchen v. Dallas County,* 759 F.3d 468, 477 (5th Cir. 2014).  Therefore, the Court will not dismiss Callaway's Section 1983 claims based on the Fourteenth Amendment.

To the extent Callaway characterizes her Section 1983 claim as one for excessive force against a pretrial detainee under the Fourteenth Amendment, however, the Supreme Court has recently clarified that the same "objective reasonableness" standard used in analyzing Fourth Amendment claims applies. *Kingsley v. Hendrickson,* No. 14-6368, 2015 U.S. LEXIS 4073, *12-13 (U.S. June 22, 2015) (citing *Graham,* 490 U.S. at 396).  Given this clarification, *id.,* along with the Supreme Court's repeated pronouncements that the Fourth Amendment applies to excessive force claims relating to involuntary blood draws from arrestees, *see Missouri v. McNeely,* 133 S. Ct. 1552,

All Defendants' motions to dismiss point out that nonconsensual blood draws pursuant to a warrant have passed constitutional muster under the "unreasonable search and seizure" prong of the Fourth Amendment. *McNeely,* 133 S. Ct. at 1559-60; *see also Schmerber.* 384 U.S. at 767 (authorizing even a warrantless blood draw in "exigent circumstances"). Callaway, however, is not asserting a Fourth Amendment challenge to the reasonableness of her arrest, the issuance of the warrant, or the constitutional validity of the blood draw pursuant to the warrant. *See generally* 2d. Am. Compl. [Dkt. #35] at 3-13. Her complaint centers on the allegedly unreasonable manner in which the blood draw was carried out. *Id.* To the extent her allegations are couched in terms of "excessive force" and "unreasonable search and seizure," these are simply different phrases that describe the same alleged constitutional violation, specifically the Defendants' use of force out of any reasonable proportion to the circumstances presented. Therefore, Defendants' conduct must be analyzed under the "excessive force" factors set out in *Graham,* 490 U.S. 386, 394-95 and reiterated in *Kingsley,* 2015 U.S. LEXIS 4073, *12-13.

To state a violation of the Fourth Amendment's prohibition on the use of excessive force, Callaway "must allege (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008). The standard for determining whether the use of force is objectively unreasonable is well established: it is a fact sensitive inquiry that turns on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Additional considerations that "may bear on the reasonableness or unreasonableness of the force used

---

1559-60 (2013), and *Schmerber,* 384 U.S. at 767, this Court will analyze all of Callaway's excessive force claims under the objectively reasonable standard articulated in *Graham,* 490 U.S. at 394-95.

[include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, No. 14-6368, 2015 U.S. LEXIS 4073, *12-13 (U.S. June 22, 2015).

Though each state actor's conduct must be evaluated individually for purposes of Section 1983, a claim for "bystander liability" may be stated against an officer who did not personally act against the Plaintiff. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Bystander liability requires that the state actor "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.; see also Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995) ("an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [S]ection 1983") (citing *Harris v. Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976)). Callaway asserts bystander claims against each of the individual officers and deputies named in her Second Amended Complaint. Dkt [#35] at 9-10.

### III.    Analysis

#### A.    Motion to Dismiss by Pro-Touch and Nurse Ramsey-Graham

The first Motion to Dismiss at issue was filed by Defendants Pro-Touch and Ramsey-Graham [Dkt. #41]. Callaway asserts the following complaints against these Defendants: (1) Ramsey-Graham, acting under color of state law in her role as a contractor for the City of Austin, violated Callaway's Fourth and Fourteenth Amendment rights by drawing blood while APD and/or Travis County officers were using excessive force against her; (2) Pro-Touch, as a contractor for the City, is liable for the alleged Section 1983 violation; (3) Ramsey-Graham

committed assault under state law by taking blood without Callaway's consent, for which Pro-Touch is vicariously liable; (4) Ramsey-Graham was negligent in taking Callaway's blood under unsafe and unsanitary conditions, for which Pro-Touch is vicariously liable; and (5) Ramsey-Graham committed medical malpractice by taking Callaway's blood in these conditions, for which Pro-Touch is vicariously liable. 2d Am. Compl. [Dkt. #35] at 8-12.

### 1. Section 1983 Claims Against Ramsey-Graham

Callaway's factual allegations against Ramsey-Graham are: (1) she was acting under color of state law in her role as contract phlebotomist for the City, (2) she made one unsuccessful attempt to draw Callaway's blood while Callaway was restrained but shaking, and (3) she made a second, successful blood draw from Callaway's hand when Callaway's body went limp from an officer's alleged choke hold. 2d Am. Compl. [Dkt. #35] at 5-6. These allegations do not implicate Ramsey-Graham in any violation of Callaway's constitutional rights because they do not allege any action or inaction by Ramsey-Grahm caused an injury resulting "directly and only" from excessive force. *Bush*, 513 F.3d at 501.

There is no allegation in the Second Amended Complaint that Ramsey-Graham took part in any of the restraining activities that allegedly caused Callaway's injuries: bruising around the throat, nerve damage, and post-traumatic stress disorder. *Id.* at 13. Callaway does not allege Ramsey-Graham caused her any injury in her attempts to draw a blood sample, nor does she allege Ramsey-Graham used excessive force in her attempts to draw the blood sample. *Id.* at 5-6; *See Bush*, 513 F.3d at 501 (excessive force claim must identify injury that resulted "directly and only" from the use of excessive force). Callaway has not alleged a "bystander liability" claim against Ramsey-Graham. *Id.* at 9-10. The only allegation against Ramsey-Graham is that she twice attempted to Callaway's blood at the direction of a police officer, pursuant to a

warrant. As noted above, the Supreme Court has found nothing unconstitutional about the mere fact of a nonconsensual blood draw authorized by a warrant. *McNeely,* 133 S. Ct. at 1559-60. Nor is there anything inherently excessive or shocking about the act of drawing blood to obtain evidence. *Schmerber.* 384 U.S. at 767. Callaway's factual allegations concerning Ramsey-Graham's two attempts to draw Callaway's blood do not state a claim for excessive force or any other constitutional violation. *Bush,* 513 F.3d at 501; *see also McNeely,* 133 S. Ct. at 1559-60. Therefore, Callaway's Section 1983 claim alleging excessive force against Ramsey-Graham is DISMISSED without prejudice.

### 2. Section 1983 Claims Against Pro-Touch

Callaway does not specify how Defendant Pro-Touch is liable under Section 1983. *Id.* at 9. As noted above, the actions of Pro-Touch's employee, Ramsey-Graham, did not rise to a violation of Callaway's constitutional rights. In any event, "a private corporation [is] not vicariously liable under [Section] 1983 for its employees' deprivations of others' civil rights." *Lonoaea v. Corr. Corp. of Am.,* 665 F. Supp. 2d 677, 685 (N.D. Miss. 2009) (citing *Monell v. Dep't Soc. Servs.,* 436 U.S. 658 (1978)); *see also Olivas v. Corr. Corp. of Am.,* 408 F. Supp. 2d 251, 254-55 (N.D. Tex. 2006) ("It is appropriate to apply the common law standards that have evolved to determine [Section] 1983 liability for a municipal corporation to a private corporation").[2] Therefore, even if Callaway had stated a viable Section 1983 claim against

---

[2] The Fifth Circuit has yet to adopt this holding, but every circuit that has considered the issue has extended *Monell*'s rejection of respondeat superior liability to private corporations. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012); *see also Street v. Corr. Corp. of Am.,* 102 F.3d 810, 818 (6th Cir. 1996); *Buckner v. Toro,* 116 F.3d 450, 453 (11th Cir. 1997); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 408-09 (2d Cir. 1990); *Lux v. Hansen,* 886 F.2d 1064, 1067 (8th Cir. 1989); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1433 (10th Cir. 1984), *vacated on other grounds sub nom. City of Lawton v. Lusby,* 474 U.S. 805 (1985); *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982).

Ramsey-Graham, her claim against Pro-Touch would fail in the absence of some allegation of direct liability. *Id.*

Pro-Touch is potentially liable for its own acts and omissions as a state actor by reason of its contract with the City. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). But Callaway has not alleged that any policy, procedure, failure to train, or other direct action of Pro-Touch caused the use of excessive force to restrain her during the blood draw, which is the constitutional violation at issue in this case. *See* 2d. Am. Compl. [Dkt. #35] at 10-11 (alleging policy and procedure liability against the City and County only). Plaintiff's Section 1983 claim against Pro-Touch is therefore DISMISSED without prejudice.

### 3.  *Pendent State Law Claims Against Ramsey-Graham and Pro-Touch*

The Court has supplemental jurisdiction over Callaway's state law claims. 28 U.S.C. § 1367. The exercise of supplemental jurisdiction is grounded in "considerations of judicial economy, convenience, and fairness to litigants." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580 (5th Cir. 1992). Because all of Callaway's federal claims against Ramsey-Graham and Pro-Touch have been dismissed, and this case has not yet proceeded past the motion to dismiss stage, the *Gibbs* factors weigh against the exercise of supplemental jurisdiction over the remaining state law claims against Pro-Touch and Ramsey-Graham. 383 U.S. at 726. Therefore, the remaining state law claims against these Defendants are DISMISSED without prejudice.

## B.  Motion to Dismiss By Travis County and the Travis County Deputies

The Court next considers the Motion to Dismiss filed by Travis County and the Travis County Sheriff's Deputies named in the Second Amended Complaint.  [Dkt. #44].  Callaway asserts the following complaints against these Defendants:  (1) the individual Travis County Deputies violated Callaway's constitutional rights by using excessive force to restrain her during the blood draw, including strapping her into the restraint chair, putting a bag over her head, and choking her; (2) to the extent any individual officer did not directly participate in this conduct, all the individual officers had a duty to recognize and stop the excessive force being used by their colleagues and are therefore subject to bystander liability under Section 1983; (3) in the alternative, the officers' conduct constitutes assault and battery and negligence under state law; and (4) Travis County is liable under Section 1983 for having an informal policy encouraging the use of excessive force during nonconsensual blood draws and/or for failing to train the officers in the proper techniques to obtain nonconsensual blood draws without excessive force.  2d Am. Comp. [#35] at 8-12.  The Travis County Defendants respond that the statute of limitations has run as to the individual Deputies, and that Plaintiff has failed to state a Section 1983 claim against Travis County because she has not plead an underlying constitutional violation or a policy of Travis County that was the moving force behind such a violation.  Am. Mot. Dism. [Dkt. #45].

### 1.  Statute of Limitations as to Individual Travis County Deputies

The Second Amended Complaint marks the first time that Plaintiff has named the individual Travis County Deputy Defendants; her Original and First Amended Complaints alleged claims against "John Does" who worked for the Travis County Sherriff's Office.  Compl.

[Dkt. #1]; 1st Am. Compl. [Dkt. #10]. Plaintiff's Original Complaint was filed on February 4, 2015, two years after the blood draw at issue. *See* 2d Am. Compl. [Dkt. #35] at 3.

The limitations period for a Section 1983 action is determined by the state's personal injury limitations period, which in Texas is two years. *Whitt v. Stephens County*, 529 F.3d 278, 282-83 (5th Cir. 2008) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998); TEX. CIV. PRAC. & REM. CODE § 16.003). Plaintiff's filing against the "John Doe" defendants on the last day of the limitations period is insufficient to preserve her claims against the individual deputies, because "an amendment to substitute a named party for a John Doe does not relate back under [Federal Rule of Civil Procedure] 15(c)." *Whitt*, 529 F.3d at 283.

"Because the Texas statute of limitations is borrowed in [Section] 1983 cases, this court also looks to Texas's equitable tolling principles." *Green v. Doe*, 260 F. App'x. 717, 719-20 (5th Cir. 2007) (citing *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998)). Callaway argues for the application of the discovery rule (a variant of equitable tolling) to toll the statute of limitations for joining the individual deputies. Resp. [Dkt. #53] at 6-8. Callaway alleges that, after she filed her Original Complaint describing the actions of the Doe defendants in detail, she sought and was denied discovery of their individual identities. *Id.* at 6-7. Callaway asserts she was thus unable to identify the deputies by name until late in the state criminal proceedings arising out of this incident (during which Callaway was acquitted of any crime). *Id.* She further asserts the State's motions to continue the criminal proceedings prevented her from timely identifying the deputies in the federal civil suit. *Id.* [3,4]

---

[3] Travis County accuses Callaway of misleading this Court as to when she knew the identities of the deputies. Reply [Dkt. #54] at 6-8. On April 6, 2015, well before her Second Amended Complaint was filed, Callaway accidentally filed in this case her trial subpoenas to the individual deputies for the related state court criminal case. *See* [Dkt. #33], Request for Issuance of Summons. The Court is in agreement with Travis County's sentiment, "before Plaintiff's counsel accuses a Travis County judge and prosecutors of fraudulently concealing the

It is true that "Texas permits the tolling of limitations where a plaintiff's legal remedies are precluded by the pendency of other legal proceedings." *Green*, 260 F. App'x at 719-20 (citing *Holmes v. Tex. A&M Univ.*, 145 F.3d 681, 684-85 (5th Cir. 1998)).  Callaway, however, has not established her entitlement to equitable tolling under the circumstances before the Court. Plaintiff filed her John Doe complaint on the last day of the statute of limitations for her Section 1983 claims, while her criminal case was still ongoing.  Plaintiff's excessive force claim was not stayed during the pendency of the DWI prosecution, *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)), because a claim for excessive force is not inherently inconsistent with DWI chargers.  *See Ballard v. Burton*, 444 F.3d 391, 399-401 (5th Cir. 2006) (citing *Heck*, 512 U.S. at 486-87).[5]  Thus, it cannot be said that the ongoing criminal proceedings prevented Plaintiff from filing her civil suit.  *Holmes*, 145 F.3d at 685 (where Plaintiff was not required to exhaust administrative remedies before filing suit, the pendency of these legal proceedings did not toll the limitations period to bring suit).

"[T]he use of the 'John Doe' . . . serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants."  *Green*, 260 F. App'x at 719-20.  As a result of Plaintiff's choice to file on the last day of the limitations period, no timely discovery of any of the Doe Defendants' true identities could be possible.  *Nazersadeh v. Harris County*, No. H-08-0499, 2010 U.S. Dist. LEXIS 101365, *104 (S.D. Tex. Sept. 27, 2010).

---

names of the Travis County Officers, she needs to consider the documents she has filed with the Federal District Court." Reply [Dkt. #54] at 8.  But, embarrassing and detrimental to counsel's professional credibility though these documents may be, the mistaken April 6, 2015 filings are already well outside the limitations period and are not relevant to the equitable tolling analysis discussed above.

[4] Travis County additionally seeks to add to the record unfiled discovery responses in the criminal case, suggesting Callaway knew the identity of the officers in 2014. [Dkt. #54], Exhibit 2.  These discovery materials are not proper subjects for judicial notice, *see* FED. R. EVID. 201, and do not change the result of the equitable tolling analysis made on the pleadings alone.  Therefore, the Court declines to convert the County's motion to dismiss into a motion for summary judgment by considering them.  FED. R. CIV. 12(d).

[5] It should be noted that any possible *Heck* concerns were completely extinguished when Plaintiff was acquitted in the criminal case.  *Heck*, 512 U.S. at 487.

"Because Plaintiff's own actions precluded [her] ability to identify the proper names of the John Doe defendants by not allowing [her]self time to conduct discovery, Plaintiff has not demonstrated that the Court should equitably toll the limitations period." *Amin-Akbari v. City of Austin*, 52 F. Supp. 3d 830, 842 (W.D. Tex. 2014). Therefore, Callaway's Section 1983 claims against the individual Travis County Sheriff's Deputies, Joseph Hosten, Tuni Orton, Joshua Strickland, Lisa Johnson, and FNU Robles must be dismissed with prejudice because the statute of limitations has run with respect to these defendants. *Whitt*, 529 F.3d at 282-83. The same limitations argument applies with equal force to Plaintiff's state law claims for assault and battery and negligence. *See* TEX. CIV. PRAC. & REM. CODE § 16.003 (the statute of limitations for personal injury claims is two years).[6] Therefore, all of Plaintiff's claims against Travis County Sheriff's Deputies, Joseph Hosten, Tuni Orton, Joshua Strickland, Lisa Johnson, and FNU Robles are DISMISSED with prejudice.

### 2. Monell *Claims Against Travis County*

Travis County asserts Plaintiff has failed to plead viable direct liability claims against it pursuant to *Monell*, 436 U.S. 658, because she has failed to identify with specificity that any Travis County officer violated her constitutional rights, and because she has failed to identify a policy or procedure of Travis County that was the moving force behind any such violation. Am. Mot. Dism. [Dkt. # 45] at 12-14. These arguments demonstrate a fundamental misunderstanding of the Plaintiff's burden at the Motion to Dismiss stage. *Iqbal*, 556 U.S. at 678 (a complaint must contain sufficient factual allegations, accepted as true, to "state a claim for relief that is

---

[6] Additionally and in the alternative, the Travis County Sheriff's Deputies are entitled to dismissal of the state law tort claims against them pursuant to Tex. Civ. Prac. & Rem. Code § 101.106(f), which "forecloses suit against a government employee in his individual capacity if he was acting within the scope of his employment." *Franka v. Velasquez*, 332 S.W.3d 367, 378 (Tex. 2011) (holding Section 101.106(f) applicable to intentional torts such as assault and battery).

plausible on its face.") (citing *Twombly*, 550 U.S. at 556).  Plaintiff's factual allegations must rise to the level of *plausibility*, not certainty.  *See id.*

### i.  The underlying Constitutional violation is adequately plead.

"Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).  Travis County acknowledges Callaway has specifically alleged that each of the individual Travis County Sherriff's deputies either participated in, or had a duty to stop, the excessive force used during her blood draw, which included putting a bag over her head. Am. Mot. Dism. [Dkt. #45] at 13. Travis County then asserts, because Plaintiff could not see which individual officer subsequently grabbed or choked her, the allegations of excessive force "show no more than a possibility of misconduct by someone." *Id.*  This Court's "judicial experience and common sense," *Leal*, 731 F.3d at 410, lead it to the conclusion that it is unreasonable to require a Plaintiff, at the pleading stage, to identify her alleged attackers individually while essentially blindfolded by them.

The argument that a plaintiff has failed to state a claim for excessive force simply because the witness could not see which officer did what fails at the **summary judgment** stage. *Sanchez v. Fraley*, 376 F. App'x 449, 454-55 (5th Cir. 2010) (citing *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005)) (denying summary judgment on excessive force issues even though eyewitness could not see some of officers' acts, because challenges to the witness' "credibility and personal knowledge" are issues for the fact finder); *Estate of Potter v. Bexar County Hosp. Dist.*, No. SA-03-CA-55-PM, 2004 U.S. Dist. LEXIS 27496, *36, *46, *58-59 (W.D. Tex. May 3, 2004) (rejecting summary judgment argument that plaintiff "could not directly implicate any officer sued as one involved in the acts plaintiff has alleged against them"

16

where an eyewitness could see that multiple officers were involved in taking plaintiff to the ground, but could not see which officer did what specific act to the plaintiff in the course of the takedown).[7]   At the pleading stage, the plaintiff has no duty to resolve disputed issues of fact. FED. R. CIV. P. 8; *see also Leal*, 731 F.3d at 416 (motion to dismiss denied where the resolution of a key factual question "would still be unclear at this early stage of the case").   Travis County's argument that Callaway has failed to plead an underlying constitutional violation is without merit.[8]

### ii.  Customs, policies, and practices have been adequately plead.

Municipal liability under Section 1983 requires proof of three elements:   (1) a policymaker, (2) a policy or custom, and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Pietrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).  In *Leatherman*, 507 U.S. at 168, the Supreme Court rejected the Fifth Circuit's application of a heightened pleading standard to Section 1983 claims against municipalities, reaffirming that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[7] *Meadours v. Ermel*, 482 F.3d 417, 422 (5th Cir. 2007) (overruled on other grounds by *Bustos v. Martini Club*, 599 F.3d 458, 463 (5th Cir. 2010), cited by the City Defendants for the proposition that each defendant's conduct must be considered individually, is not to the contrary.  There is a difference between a material issue of fact as to which defendant did what, *Estate of Potter*, 2004 U.S. Dist. LEXIS 27496, *58-59, and an issue of law requiring that each defendant's conduct be analyzed separately.  *Meadours,* 482 F. 3d at 422.

[8] The Court does not read Travis County's Amended Motion to Dismiss [Dkt. #45] and related briefing to argue that there is no underlying Constitutional violation because the statute of limitations has run as to the alleged individual offenders.  In the event the County seeks to rely on this argument, however, it is foreclosed by case law holding that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009).  Where, as here, the officers were dismissed on statute of limitations grounds, not on the merits, there is nothing inconsistent about allowing the *Monell* claim against Travis County to survive. *Askins v. Doe*, 727 F.3d 248, 253-54 (2d Cir. 2013) ("It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.").

*Leatherman,* of course, predates the "plausibility" requirement of *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 556 U.S. 662 (2009). Travis County asserts *Twombly* and *Iqbal* demand something more than Plaintiff's allegations concerning the County's policy of requiring blood draws to be performed in the jail and failing to establish or train officers on any policies to ensure non-consensual blood draws in this setting would be accomplished safely. Am. Mot. Dism. [Dkt. #45] at 13-14. This Court, however, agrees with the thoughtful reconciliation of *Leatherman* and *Twombly/Iqbal* articulated in *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-45 (S.D. Tex. 2011). The Thomas Court reasoned that the cases should be harmonized by "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* at 844.

Examples of allegations that go beyond boilerplate to give defendants fair notice of the municipal liability claims against them "include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id.* As always, the truth of these factual assertions must be assumed at the pleading stage; "'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" *Id.* (quoting *Leatherman*, 507 U.S. at 168-69).

In this case, Callaway has alleged the excessive force used to draw her blood "was the result of both the lack of an effective policy addressing the procedure to be used when performing blood draws and/or lack of training on an effective policy, as well as the informal policies and practices that were used by Travis County." Resp. [Dkt. #53] at 17. She further alleges Travis County "had a policy . . . to require blood draws from DWI suspects be performed

at the jail.  No formal policy was ever established to provide procedures to follow during the blood draw that ensure that the blood draw will be safe and sanitary." *Id.*  Callaway specifically alleges it was Travis County's unwritten policy or custom to use a restraint chair, a hood, and physical force up to and including choke holds to take a suspect's blood in every case of an involuntary blood draw at the County jail.  2d Am. Compl. [Dkt. #35] at 6-7. Violations of Constitutional rights routinely occurred during the use of these procedures on other suspects, and the policy maker defendants are aware of the previous constitutional violations." Resp. [Dkt. #53]. at 18.  These are exactly the type of specific factual allegations that go beyond mere boilerplate and provide Travis County with fair notice of Plaintiff's claims. *Thomas*, 800 F. Supp. 2d at 844-45; *see also Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) rec. adopted, (N.D. Tex. Sept. 23, 2014).  Therefore, Travis County's Motion to Dismiss the *Monell* claims against it is DENIED.

## C. Motion to Dismiss By City of Austin and Austin Police Officers

Last but not least, the Court turns to the City Defendants' Rule 12(b)(6) Motion to Dismiss [Dkt. #43].  The Court DENIES the Motion to Dismiss as to the City's direct liability for substantially the same reasons articulated with regard to Travis County in Section B.2.ii, above.  The Motion to Dismiss with regard to individual officers Adam Johnson and Patrick Oborski is GRANTED as to the state law claims alleged against them but DENIED as to Callaway's Section 1983 claims.

### 1. Monell *Claims Against the City of Austin*

Callaway has alleged with specificity that the City of Austin had a policy to make involuntary blood draws at the County jail instead of at a hospital and did not create any formal written policy or procedure or provide any training to ensure the safety of involuntary blood

draws taken at the jail. 2d Am. Compl. [Dkt. #35] at 6-7. Callaway further alleges the unwritten policy or custom of the City is to use a restraint chair, a hood, and physical force up to and including choke holds to take a suspect's blood in every case of an involuntary blood draw at the County jail. *Id.* Callway alleges "the known and obvious consequences of these policies, practices, and customs was that state actors would be placed in recurring situations in which the exact types of constitutional violations alleged herein would result." *Id.* at 10. These factual allegations rise above mere boilerplate and give the City fair notice of the claims against it. *Thomas*, 800 F. Supp. 2d at 844-45. The City's Motion to Dismiss Callaway's *Monell* claims is DENIED.

### 2. Claims Against Defendants Johnson and Oborski

Callaway timely named Officers Johnson and Oborski in her Original Complaint, so the statute of limitations issues applicable to the Travis County "Doe" defendants do not apply here. *See* Compl. [Dkt. #1]. Callaway asserts Officer Oborski was the arresting officer who obtained a warrant for the blood draw, and Officer Johnson was the supervisor on duty at the jail at the time of the blood draw and also used his boot and body weight to hold her arm down during the blood draw. *See generally* 2d Am. Compl. [Dkt. #35] at 3-6. She alleges both Oborski and Johnson were present during multiple officers' use of excessive force, including a choke hold, against her and that Oborski and Johnson each had a duty to recognize and prevent the use of excessive force. *Id.* at 9-10. Callaway asserts state law claims for negligence and assault and battery against Oborski and Johnson, *id.* at 11, and further asserts claims that both officers violated her rights under Section 1983 by participating in the use of excessive force and/or by failing to stop the use of excessive force during the blood draw. *Id.* at 10-11.

*i.  Callaway's state law claims must be dismissed.*

Officers Johnson and Oborski have moved to dismiss the negligence and intentional tort claims against them pursuant to Texas Civil Practice and Remedies Code Section 101.106(f). This section of the Texas Tort Claims Act (TTCA) provides that a government employee can move to dismiss a suit that alleges common law tort claims arising out of acts taken within the scope of his employment. *Id.*; *Franka v. Velasquez,* 332 S.W.3d 367, 381 (Tex. 2011).

Callaway admits she "has made the allegations of [state law] intentional torts against the individual officers in their personal capacity as alternative claims in the event that some or all of the officers' conduct is determined to be outside the scope of employment." Resp. [Dkt. #46]. She does not, however, specify any particular actions of either Officer Johnson or Officer Oborski that she contends were outside the scope of their duties as Austin police officers. *See generally id.*; 2d Am. Compl. [Dkt. #35] at 3-8. As the allegations in Plaintiff's Second Amended Complaint concern actions taken by Officers Johnson and Oborski in the course of arresting her and obtaining a blood draw pursuant to a warrant, all of the conduct alleged is within the scope of their employment and the officers are entitled to dismissal of the state law claims brought against them in their individual capacities. *Stinson v. Fontenot*, 435 S.W.3d 793, 793-94 (Tex. 2014) (where plaintiff's tort claims all related to officer's conduct during a traffic stop and arrest, and plaintiff did not identify any actions of the officer that were alleged to be outside the general scope of his employment, the officer was entitled to dismissal under TEX. CIV. PRAC. & REM. CODE § 101.106(f)).

Section 101.106(f) affords the plaintiff the opportunity to amend her complaint within 30 days to bring the tort claims against the governmental unit. TEX. CIV. PRAC. & REM. CODE § 101.106(f)). In this case, however, amendment would be futile because the Texas Tort Claims

Act does not waive governmental immunity for negligence or intentional torts. *Franka*, 332 S.W. 3d at 355-77 (collecting cases). Therefore, Callaway's common law tort claims alleging negligence and assault and battery against Officers Johnson and Oborski are DISMISSED with prejudice.

### ii. *Callaway has stated a claim for violations of Section 1983*

Callaway's Section 1983 claims against the individual officers are another matter. She alleges Johnson personally used excessive force against her by pushing down on her already-restrained arm with his hands, and then with his body weight and boot. 2d. Am. Compl. [Dkt. #35] at 5-6. In addition to her description of the actions taken by Officer Johnson individually, Callaway asserts that each of the officers and deputies present during the blood draw, including both Officer Johnson and Officer Oborski, had a duty to know that restraining Callaway with hands, body weight, and a boot and choking her into near-unconsciousness while she was already hooded and tied to a restraint chair constituted excessive force. 2d Am. Compl. [Dkt. #35] at 9-10. Callaway further asserts each officer and deputy had an individual duty to stop their fellow officers and deputies from using excessive force against Callaway. *Id.* at 9-10.

In response to these allegations, the City asserts Callaway has failed to allege any excessive force took place because she has not identified any physical conduct by the officers and deputies "other than strapping into a restraint chair, handcuffing arms and legs to the restraint chair, and a chokehold." Reply [Dkt. #47] at 3. In the same vein, the City asserts Callaway has alleged no physical contact by Johnson "other than [being] 'grabbed,' 'press[ed] down' on one arm, and 'used his boot and bodyweight'" to hold her arm down. *Id.* (emphasis added). The City's Motion to Dismiss does not effectively examine Callaway's factual allegations in light of the three *Graham* factors: (1) the severity of the crime at issue, (2) whether

22

the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect is actively attempting to evade arrest. *Graham*, 490 U.S. at 396. "Although officers may need to use 'physical force to effectuate a suspect's compliance' . . . the officers still must assess 'the relationship between the need and the amount of force used.'" *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

The City cites case law (involving officers trying to subdue dangerous and violent resistance) finding that a chokehold was objectively reasonable in the circumstances. Reply [Dkt. #47] at 3 (citing *Gassner v. City of Garland*, 864 F.2d. 384, 400 (5th Cir. 1989). But the Fifth Circuit has expressly held that the objective reasonableness of a chokehold depends on its relationship to the suspect's level of resistance. *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999); *clarified by* 186 F.3d 633 (5th Cir. 1999). It is well established that "the need for force determines how much force is constitutionally permissible." *Bush*, 513 F.3d at 501. The chokehold in *Gassner*, which is held up by the City as support for the use of the chokehold alleged in this case, was deemed objectively reasonable "[g]iven Gassner's resistance to arrest." 864 F.2d. at 400. While the use of a chokehold may be objectively reasonable to counter a suspect's active attempt to escape or conceal evidence, the same maneuver, undertaken by the same officer on the same suspect, is objectively unreasonable "in the absence of any valid reason for [the defendant] to continue physical contact" with the suspect. *Williams,* 186 F.3d at 634.

Courts in the Fifth Circuit and throughout the country have found the use of force against a suspect who is already physically restrained and not actively resisting officers' commands is objectively unreasonable. *See, e.g., Bush*, 513 F.3d at 501 (objectively unreasonable to "forcefully slam[] Bush's face into a vehicle when Bush was handcuffed and subdued");

*Mierthew v. Amore*, 417 F. App'x 494, 497-98 (6th Cir. 2011) (objectively unreasonable to "utilize[] the arm-bar takedown when plaintiff was unarmed, handcuffed, surrounded by police officers, physically restrained, and located in the secure confines of a police station"); *Ketchum v. Khan*, No. 10-14749, 2014 U.S. Dist. LEXIS 97472, 14-17 (E.D. Mich. July 18, 2014) (objectively unreasonable to choke restrained suspect and use body weight to twist restraints when his only resistance to a blood draw was verbal); *Cook v. Olathe Med. Ctr. Inc.*, 773 F. Supp. 2d 990, 1005-06 (D. Kan. 2011) (objectively unreasonable for officers to hold down and choke a suspect "while she was compliant, handcuffed and strapped to a stretcher"); *Morris v. Fresno Police Dep't*, No. 08-CV-01422-OWW-GS, 2010 U.S. Dist. LEXIS 54699 (E.D. Cal. May 28, 2010) (objectively unreasonable to twist subject's arm into an arm-bar lock "while he was calmly having his blood drawn"); *Roach v. Bandera County*, No. SA-02-CA-106-XR, 2004 U.S. Dist. LEXIS 10792, *24-26 (W.D. Tex. June 9, 2004) (objectively unreasonable to "push[] [suspect] into doors and walls when he is handcuffed and not resisting arrest").

Even if a suspect is engaging in some level of resistance, an officer's use of force is objectively unreasonable if its severity is disproportionate to the level of resistance offered by the suspect. *Chacon v. Copeland*, 577 F. App'x. 355, 361-362 (5th Cir. 2014) (fact issue as to whether officers' use of force against bystander was reasonable when bystander's resistance was minimal); *see also Stokes v. Porretto*, No. G-04-0596, 2006 U.S. Dist. LEXIS 71060, *49 (S.D. Tex. Sept. 29, 2006) (fact issue as to whether it was objectively unreasonable for officer to kneel on top of restrained suspect and squeeze suspect's genitals to force him to submit to having his stomach pumped). In particular, where a suspect is noncompliant but is not attempting to fight or flee, the Fifth Circuit has found the immediate resort to physical force "without attempting to

use physical skill, negotiation, or even commands" is objectively unreasonable. *Newman*, 703 F.3d at 763; *see also Deville*, 567 F.3d at 169.

In light of this well-established body of case law, the officers' use of physical force against Callaway, up to and including a chokehold, which allegedly took place after Callaway was already tied to a restraint chair at multiple points, handcuffed to the chair by her hands and feet, hooded so that she could not see, and resisting (if at all) only by shaking within her restraints, is objectively unreasonable. 2d Am. Compl. [Dkt. #35] at 5-6; *Bush*, 513 F.3d at 501. At the Motion to Dismiss stage, taking Callaway's factual allegations as true, she has stated a claim that Officers Johnson and Ostrowsky had a duty to recognize and prevent the use of excessive force against her while she was restrained, *Hale v. Townley*, 45 F.3d at 919, and that Officer Johnson himself used excessive force in pressing on Callway's already strapped-down and handcuffed arm "with the aid of his boot." 2d Am. Compl. [Dkt. #35] at 5-6; *Bush*, 513 F.3d at 501.[9]

---

[9] The Officers argue that Callaway has failed to establish a cognizable injury as a result of the alleged excessive force. Mot. Dism. [Dkt. #6] at 7. This argument ignores clearly established law that "an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Bush*, 513 F.3d at 501. "[I]n the context of custodial interrogation, the use of nearly any amount of force may result in a constitutional violation when a suspect 'poses no threat to [the officers'] safety or that of others, and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (quoting *Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983)). Specifically, injuries similar to those claimed by Callaway are cognizable under Section 1983 if they are the result of constitutionally impermissible excessive force. *Ikerd*, 101 F.3d at 435 (finding "soft tissue injury to her forearm, possible nerve damage, and post-traumatic stress disorder" were cognizable injuries for plaintiff's excessive force claim). The Fifth Circuit has expressly held that even the type of fleeting injuries claimed by Callaway resulting from the alleged chokehold ("while being choked, he could not breathe or swallow, and experienced dizziness , and [] the incident caused him to cough and have to catch his breath") are *de minimis* when incident to a lawful use of force but cognizable when incident to an objectively unreasonable use of force. *Williams*, 180 F.3d at 703-04. Moreover, "psychological injuries [such as Callaway's claimed PTSD] may sustain a Fourth Amendment Claim." *Flores v. City of Palacios*, 381 F.3d 397-98 (5th Cir. 2004). Under the circumstances alleged by Callaway, taken as true for purposes of the Motions to Dismiss, the "injury" requirement of her excessive force claim is satisfied and provides no basis for dismissal. *Williams*, 180 F.3d at 703-04; *Ikerd*, 101 F.3d at 434.

### iii.  The Officers are not entitled to qualified immunity.

Officers Johnson and Oborski assert they are entitled to qualified immunity as to Callaway's excessive force claims.  Mot. Dism. [Dkt. # 43] at 6.  The doctrine of qualified immunity affords protection from both litigation and liability to public officials, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  The doctrine has been read broadly to protect "all but the plainly incompetent or those who knowingly violate the law."  *Brady v. Fort Bend County*, 58 F.3d 173, 174 (5th Cir. 1995).  In particular, officers acting pursuant to a valid warrant are entitled to qualified immunity in most circumstances, *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005).  Nevertheless, qualified immunity must be denied where material fact issues exist concerning whether an officer acted unreasonably in executing an otherwise valid warrant.  *Id.* at 262-63 (denying qualified immunity where fact issue existed as to whether officers' forcible entry pursuant to a search warrant was reasonable); *see also Heitschmidt v. City of Houston*, 161 F.3d 834, 839-40 (5th Cir. 1998) (denying qualified immunity where fact issues existed as to whether officers used excessive force and unreasonably detained homeowner incident to executing search warrant).  At this stage of the litigation, taking Callaway's factual allegations as true, qualified immunity is not available because Callway has sufficiently alleged the officers used force that was not objectively reasonable in light of clearly established law in the course of carrying out the warrant for her blood draw.  *Michalik*, 422 F.3d at 261; *Heitschmidt*, 161 F. 3d at 839-40.

The basic rule that the use of force must be proportionate to the circumstances was established by the Supreme Court in 1989.  *Graham*, 490 U.S. at 396.  While the Supreme Court and the Fifth Circuit have cautioned that the qualified immunity analysis should not be

conducted "at a high level of generality," *Singleton v. Darby*, No. 14-40040 (5h Cir. May 1, 2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)), there is a well-developed body of case law in the Fifth Circuit specifically holding that the use of physical force against a restrained, passively resisting or non-resistant suspect is a constitutional violation. *See, e.g., Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983) ("We are firmly of the view that the use of physical violence against a person who is in the presence of the police for custodial interrogation, who poses no threat to their safety or that of others, and who does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified, is a constitutional violation."); *Williams*, 180 F.3d at 704 (5th Cir. 1999) (allegation of choking that was not in response to any resistance or aggression by suspect in custody was "sufficient to assert a constitutional violation."); *Bush*, 513 F.3d at 501 (5th Cir. 2008) (objectively unreasonable to "forcefully slam[] Bush's face into a vehicle when Bush was handcuffed and subdued"). There is an equally well-developed body of case law holding that an officer who witnesses such excessive force and does not act to prevent it is liable for this omission under Section 1983. *See, e.g., Hale*, 45 F.3d at 919 (5th Cir. 1995); *Harris*, 537 F.2d at 206 (5th Cir. 1976). The Court takes judicial notice that these cases cited (decided by the Fifth Circuit in 1976, 1983, 1995, 1999,and 2008) largely predate the time when Callaway, who was 22 years old in 2013, was even eligible to obtain a drivers' license, much less be arrested in a traffic stop such as the one at issue here. In light of this clearly established—and long established—case law regarding the appropriate use of force on a restrained suspect, the Court has no trouble denying the Officers' claim for qualified immunity at the motion to dismiss stage. *Bush*, 513 F.3d at 501; *Williams*, 180 F.3d at 704; *Hale*, 45 F.3d at 919; *Ware*, 709 F.2d at 351. Because Callaway has stated a Section 1983 claim for excessive force and bystander liability against Johnson, and a

Section 1983 claim for bystander liability against Oborski, and neither officer has established he is entitled to qualified immunity, the individual City Defendants' Motion to Dismiss [Dkt #43] is DENIED.

## IV. CONCLUSION

In accordance with the foregoing,

It is ORDERED that the Pro-Touch Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. #41] is GRANTED. Plaintiff's claims against Defendants Pro-Touch Nurses, Inc. and Shanea Ramsey-Graham are DISMISSED WITHOUT PREJUDICE.

It is further ORDERED that the Travis County Defendants' Amended Motion to Dismiss [Dkt. #45] is GRANTED in PART and DENIED in PART. Plaintiff's claims against individual Defendants Deputy Joseph Hosten, Deputy Tuni Orton, Deputy Joshua Strickland, Deputy Lisa Johnson, and Deputy (FNU) Robles are DISMISSED WITH PREJUDICE, and Plaintiff's Section 1984 *Monell* claims against Travis County may proceed.

It is further ORDERED that the Travis County Defendants' original Motion to Dismiss [Dkt. #44] is DISMISSED as MOOT in light of their Amended Motion to Dismiss [Dkt. #45].

It is finally ORDERED that the City Defendants' Rule 12(b)(6) Motion to Dismiss [Dkt. #43] is GRANTED in PART and DENIED in PART. Plaintiff's state law claims for negligence and assault and battery against individual Defendants Officer Adam Johnson and Officer Patrick Oborski are DISMISSED WITH PREJUDICE. Plaintiff's Section 1983 claims against Officers Johnson and Oborski and against the City of Austin may proceed.

The Court notes the claims remaining in this case are limited to (1) Section 1983 claims based on *Monell* liability against Travis County; (2) Section 1983 claims based on *Monell*

liability against the City of Austin; (3) Section 1983 claims against Officer Adam Johnson based on the use of excessive force and failure to prevent the use of excessive force by other officers present; and (4) Section 1983 claims against Officer Patrick Oborsky based on failure to prevent the use of excessive force by other officers present.

SIGNED this the _14th_ day of July, 2015.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE